UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NOBLE ROMAN'S, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-03998-TWP-TAB |
| RUSSELL ALLISON<br>d/b/a ANDY ALLIGATOR'S FUN PARK, | ) ) ) ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO TRANSFER AND MOTION TO DISMISS

Before the Court is a Motion to Transfer pursuant to 28 U.S.C. § 1404(a), filed by Defendant Russell Allison ("Allison") (Filing No. 9), as well as Allison's Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 11). This matter surrounds a dispute regarding the payment of royalties under a franchise agreement as well as other contractual disputes. Plaintiff Noble Roman's, Inc. ("Noble Roman's" or "Plaintiff") filed this action alleging breach of contract, deception, and Lanham Act violations. Allison moved to dismiss the claims for breach of contract and deception and also moved to transfer the case to the Western District of Oklahoma. For the following reasons, the Court **denies** the Motion to Transfer and **grants in part and denies in part** the Motion to Dismiss.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Noble Roman's as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Noble Roman's is an Indiana pizza company based in Indianapolis, Indiana that franchises its product—a distinctive system of offering Noble Roman's pizza, breadsticks, and related food items—and offers these franchise opportunities through a franchise agreement. Noble Roman's uses certain trade names, service marks, trademarks, logos, images, emblems, and indicia of origin that it designates for use in connection with its distinctive system ([Filing No. 1-2 at 1](Filing No. 1-2 at 1), 4–5).

Allison resides in, and operates a business called Andy Alligator's Fun Park ("Andy Alligator's") in Norman, Oklahoma. Andy Alligator's is a family entertainment center that provides games, miniature golf, miniature bowling, go-karts, bumper cars, a rock-climbing wall, laser tag, and other attractions. On October 17, 2006, Noble Roman's and Allison entered into a franchise agreement, that allowed Allison to operate a franchised Noble Roman's business at Andy Alligator's. The franchise agreement provided a ten-year period for Allison to operate the Noble Roman's business and offer Noble Roman's food at that location. Allison operated the franchise from November 16, 2007 through November 16, 2017. *Id.* at 1–2, 12.

Under terms of the franchise agreement, Allison was to provide Noble Roman's a weekly report of his gross sales of all products and services related to Noble Roman's. He was obligated to pay Noble Roman's a continuing weekly royalty fee in the amount of seven percent of the gross sales, which was due and payable each week based on the gross sales for the preceding week. And, he was required to pay interest on any royalty fees not received by Noble Roman's when the fees were due. The contract also gave Noble Roman's the right to audit Allison's books and records. *Id.* at 2–3.

Under the franchise agreement, Noble Roman's granted Allison the right to use its trade names, service marks, trademarks, and such in connection with the operation of the franchised business at the Andy Alligator's location. Allison was allowed to use Noble Roman's intellectual

property only in connection with the operation of the franchised business and was prohibited from taking any action that would prejudice or interfere with the validity of Noble Roman's rights. Allison was required to stop using the intellectual property upon termination or expiration of the franchise agreement. He was also required to stop using any confidential methods, procedures, techniques, and the distinctive forms, slogans, signs, symbols, and devices associated with Noble Roman's system after the termination or expiration of the franchise agreement. Allison was not to communicate to others or use for his own benefit any information, knowledge, know-how, techniques, or materials used with the Noble Roman's system after the termination or expiration of the franchise agreement. The franchise agreement required Allison to return to Noble Roman's all materials, items, and images used in connection with the franchised business. Furthermore, the franchise agreement established a two-year "non-compete" period following the termination or expiration of the agreement. *Id.* at 3–5. The contract also contained a provision that states,

> "WITH RESPECT TO ALL CLAIMS, CONTROVERSIES, DISPUTES OR ACTIONS, THIS AGREEMENT SHALL BE INTERPRETED AND CONSTRUED UNDER INDIANA LAW.... FRANCHISOR AND FRANCHISEE AGREE THAT ANY DISPUTES ARISING OUT OF THIS AGREEMENT WILL BE SUMITTED (*sic*) TO A COURT IN INDIANAPOLIS, INDIANA."

([Filing No. 1-2 at 38](#)–39) (emphasis in original).

In May 2015, Noble Roman's performed an audit of the gross sales reported by Allison between September 2014 and April 2015. Based on this audit, it determined that Allison failed to pay certain royalty fees when they were due, and these unpaid fees amounted to at least $3,837.22 with respect to gross sales beginning in September 2014. Noble Roman's also determined that Allison provided false and inaccurate weekly reports of gross sales beginning in September 2014 for the purpose of avoiding payment of royalty fees ([Filing No. 1-2 at 3](#)).

After Allison stopped operating the franchised business in November 2017, he continued operating food service facilities at Andy Alligator's and has been selling pizza, breadsticks, and related food items, and has been using Noble Roman's intellectual property, confidential methods, procedures, techniques, distinctive forms, slogans, signs, images, and symbols in connection with his food service operations. Allison's food service operations are of a character and concept similar to Noble Roman's and are competing with or are prejudicial to Noble Roman's goodwill and business. Furthermore, Allison failed to return to Noble Roman's all materials and items related to the franchised business as required by the franchise agreement. *Id.* at 5–6.

Noble Roman's notified Allison of his defaults under the franchise agreement and violations of the Lanham Act, and demanded that Allison stop selling pizza and related food items at Andy Alligator's, stop using Noble Roman's intellectual property, return all Noble Roman's materials and items, and pay damages for breach of the franchise agreement and violation of the Lanham Act. Allison did not comply with Noble Roman's demands. *Id.* at 6.

Noble Roman's filed a Complaint against Allison on November 16, 2018, in Indiana state court, asserting claims for breach of contract, deception, and violation of the Lanham Act. Allison removed the action to federal court on December 19, 2018 ([Filing No. 1](Filing No. 1)). Shortly thereafter, Allison filed the instant Motion to Transfer pursuant to 28 U.S.C. § 1404(a) and Motion to Dismiss pursuant to Rule 12(b)(6).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633.

However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. <u>DISCUSSION</u>

Allison asks the Court to dismiss the claims for breach of contract and deception and to transfer the case to the Western District of Oklahoma. The Court will first address the Motion to Transfer and then turn to the Motion to Dismiss.

**A.** <u>**Motion to Transfer**</u>

Title 28 U.S.C. § 1404(a) allows district courts to transfer civil actions "[f]or the convenience of parties and witnesses" and "in the interest of justice." Allison asserts that the

Western District of Oklahoma is a more convenient forum. He asks the Court to transfer this case to the Western District of Oklahoma or in the alternative to dismiss it. He asserts that the franchise agreement with Noble Roman's required the performance of contractual obligations to be undertaken in Oklahoma. Allison points out that he and Andy Alligator's are located in Oklahoma and other than Noble Roman's being located in Indiana, he and the substance of this lawsuit have no connection to Indiana.

Allison asserts he can show that venue is proper in the transferor court and the transferee court and that transfer will serve the convenience of the parties and witnesses and the interest of justice. *Lawrence v. Swift Transp. Co.*, 2007 U.S. Dist. LEXIS 83249, at *3 (S.D. Ind. Nov. 8, 2007). He asserts venue is proper in this Court because Noble Roman's filed the action in a state court within this District, and he removed the action to this Court based on federal question and diversity jurisdiction. He further asserts that venue is proper in the Western District of Oklahoma because he and Andy Alligator's are located in that district and almost all events giving rise to this action occurred in Oklahoma. Thus, venue is proper in both the transferor court and the transferee court.

In support of his position, Allison points to the following material events that occurred in the Western District of Oklahoma. The parties executed a franchise agreement whereby Allison would run a franchise business of Noble Roman's at his business in the Western District of Oklahoma. The acts related to the franchise agreement were performed in Oklahoma. The alleged breaches of contract and deception would have occurred in Oklahoma. Any competition after the termination of the franchise agreement would have occurred in Oklahoma. Allison asserts that almost every fact necessary for the determination of this action occurred in Oklahoma.

Concerning the interest of justice prong, Allison argues that transfer to the Western District of Oklahoma is appropriate because, whether he violated the non-competition clause of the franchise agreement is a matter to be determined under Oklahoma law, and the Western District of Oklahoma courts are more familiar with Oklahoma law than this Court. Further, an Oklahoma jury has more of an interest in how Oklahoma businesses are conducted. Additionally, the Southern District of Indiana is a much busier district than the Western District of Oklahoma, so the Oklahoma court likely can provide a speedier resolution to this case. Allison points the Court to the case of *Noble Roman's, Inc. v. B&MP, LLC*, 2015 U.S. Dist. LEXIS 144131 (S.D. Ind. Oct. 22, 2015), which was similar to this case and also involved Noble Roman's. In that case, the court transferred the case out of the Southern District of Indiana, and Allison argues that this Court should do the same.

Responding to the Motion to Transfer, Noble Roman's explains that *Noble Roman's, Inc. v. B&MP, LLC* is easily distinguishable because that case did not address the issue of a contractual forum selection clause. Importantly, this case does involve a forum selection clause, to which Allison is bound. The parties agreed to a contractual forum selection clause providing that any disputes would be litigated in Indianapolis, Indiana, with a choice-of-law provision using Indiana law. Pointing to *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 64 (2013), Noble Roman's argues that as a result of the forum selection clause, Allison waived the right to challenge the present forum on the basis of convenience. Furthermore, Allison has failed to show any exceptional public interest justification to overcome the forum selection clause.

Where a forum selection clause is involved, "a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* The presence of

7

a forum selection clause changes the traditional analysis of 28 U.S.C. § 1404(a), which normally requires consideration of convenience of the parties as well as public-interest considerations. "When the case involves a forum-selection clause, however, private interests drop out of the equation. ... [T]he analysis is limited to public-interest factors. And because those factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (internal citations and quotation marks omitted).

Noble Roman's argues that the forum selection clause in this case should control because it is a valid and enforceable agreement. There was no fraud, mistake, or infirmity in executing the franchise agreement. The parties agreed in their contract that Indiana law would govern, and this Court is more familiar with Indiana law than the Western District of Oklahoma. Noble Roman's notes that in 2018, civil cases were disposed of 0.4 months faster in this District than in the Western District of Oklahoma, while civil cases moved to trial only 2.9 months slower in this District than in the Western District of Oklahoma (*see* [Filing No. 29-1](#)). Thus, despite the relative congestion of this District, civil cases in the Southern District of Indiana have moved about as efficiently as those in the Western District of Oklahoma. While some events giving rise to this action occurred in Oklahoma, others occurred in Indiana; therefore, Noble Roman's asserts this factor is neutral. Thus, Noble Roman's asserts, the forum selection clause is valid and enforceable, Allison failed to show that the public-interest factors are strong enough to override the parties' preselected forum and the Court should honor the forum selection clause and deny the Motion to Transfer. Noble Roman's also argues that Allison's alternative relief, seeking dismissal under 28 U.S.C. § 1404(a), is unavailable under the statute because it is a transfer statute, not a dismissal statute.

Allison did not reply to the arguments raised by Noble Roman's in its Response Brief. Because of his failure to reply to these arguments, Allison has conceded these points regarding transfer. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession); *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008) (where a party "failed to respond to the [opposing party's] argument in a Reply Brief, . . . we find that [the party] waived" his argument); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points."); *Cintora v. Downey*, 2010 U.S. Dist. LEXIS 19763, at *12 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."); *Thomas v. Am. Family Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 92440, at *13–14 (N.D. Ind. Nov. 13, 2008) (same).

The Court is persuaded by Noble Roman's argument. The public interest factors do not overcome the strong presumption of applying the forum selection clause. Federal law treats forum selection clauses like any other contractual provision, and Indiana law (to which the parties agreed to use) generally enforces forum selection clauses. Allison presented no argument that the forum selection clause was unreasonable, unjust, the product of fraud or overreaching, or not freely negotiated.

Here, the relevant portions of the parties' executed franchise agreement lead the Court to conclude that the parties had a valid and enforceable contract with a valid and enforceable forum selection clause. The parties also agreed to a choice-of-law provision directing the application of Indiana law. Noble Roman's arguments concerning the public interest factors are well-taken, and the Court agrees with its position. In light of the guidance from the Supreme Court and Seventh

Circuit that public interest factors are rarely strong enough to override the parties' forum selection clause, the Court concludes that the parties' contractual selection to litigate in Indianapolis courts prevails. The forum selection clause demands denial of Allison's Motion to Transfer, therefore, the Court **denies** the Motion to Transfer.

**B.** **Motion to Dismiss**

In the Motion to Dismiss, Allison asks the Court to dismiss the claims for breach of contract and deception because those claims already have been adjudicated in an earlier lawsuit brought by Noble Roman's against Allison. He asserts that Rule 12(b)(6) entitles him to dismissal based on the principles of res judicata and claim preclusion, and he asserts that the deception claim was not pled with sufficient particularity to support a claim based in fraud as required by Federal Rule of Civil Procedure 9.

Allison points out that Noble Roman's brought a complaint against him in Marion Superior Court in November 2014, and that action was based on the same franchise agreement at issue in this case. Like in this case, the 2014 lawsuit brought claims for breach of contract and deception based on alleged unpaid royalty fees discovered through an audit of Allison's records as well as alleged false and inaccurate weekly reports of gross sales. In the 2014 case, the audit was performed for the period of November 2007 through April 2014 and revealed unpaid royalty fees in the amount of "at least $37,734.04 through April 2014." ([Filing No. 12-1 at 4](#).) The 2014 complaint asserted that "Allison agreed to pay a continuing weekly royalty fee," and Noble Roman's had the "right to recover all amounts due under the Agreement," and asked for damages and "all other relief right and proper in the premises" "in an amount to be proven at trial." *Id.* at 2, 5, 6, 7.

After two years of inactivity in the 2014 case, the court held a hearing and dismissed the action on February 17, 2017, under Indiana Rule of Trial Procedure 41(E) for failure to prosecute a civil action ([Filing No. 12-2 at 2](Filing No. 12-2 at 2); [Filing No. 12-3](Filing No. 12-3)). Allison asserts that this dismissal under Rule 41(E) for failure to prosecute serves as an adjudication on the merits for purposes of res judicata and claim preclusion. *See J.E. v. N.W.S.*, 582 N.E.2d 829, 831 n.2 (Ind. Ct. App. 1991) (dismissal under Trial Rule 41(E) operates as an adjudication on the merits pursuant to Trial Rule 41(B)).

Allison asserts that this action, filed on November 16, 2018, similarly is based on the same franchise agreement that was at issue in the 2014 case, and it also asserts claims for breach of contract and deception based on alleged unpaid royalty fees discovered through an audit of its records as well as alleged false and inaccurate weekly reports of gross sales. The 2014 case specifically alleged the audit performed for the period of November 2007 through April 2014 with unpaid royalty fees in the amount of at least $37,734.04 through April 2014, and this lawsuit specifically alleges an audit performed in May 2015 for the period of September 2014 through April 2015 with unpaid royalty fees in the amount of at least $3,837.22 since September 2014. The May 2015 audit was performed during the pendency of the 2014 lawsuit, and the audit period covered two months prior to the initiation of the first lawsuit in November 2014 and the six successive months. The May 2015 audit was finished during the first lawsuit, so it could have and should have been brought in that litigation, and under the principles of res judicata and claim preclusion, it cannot now be asserted in this litigation. *See Eq. W. v. Ind. Dep't of Child Servs.*, 106 N.E.3d 536, 539 (Ind. Ct. App. 2018); *Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018) (claim preclusion applies when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties, and all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action).

Based on these facts, Allison argues the breach of contract and deception claims in this lawsuit must be dismissed because the two lawsuits involve the same two parties and involve the same two claims based on the same facts and evidence.[1]

In its Response Brief, Noble Roman's "concedes that the dismissal of the 2014 Action pursuant to Indiana Trial Rule 41(E) was a dismissal with prejudice and thus operated as an adjudication on the merits of Plaintiff's claims under Complaint I pursuant to Indiana Trial Rule 41(B)." (Filing No. 34 at 7.) However, Noble Roman's argues, its claims for "breach of contract and deception in the Present Action are new, distinct claims that arose after the commencement of the 2014 Action. Therefore, the dismissal of Plaintiff's claims in the 2014 Action does not act to bar Plaintiff's claims in the Present Action under the doctrine of res judicata." *Id.* at 2.

Noble Roman's argues that Allison's position is factually and legally flawed. Allison asserted that the breach of contract claim in the 2014 lawsuit was based on alleged non-payment of royalty fees under the parties' franchise agreement and alleged submission of false reports. However, the breach of contract claim in the 2014 case also was based on Allison's failure to use commercially reasonable efforts to achieve optimum sales. And Allison asserted that the breach of contract claim in this lawsuit is based on alleged non-payment of royalty fees and alleged submission of false reports. However, the breach of contract claim in this case also is based on ten other distinct breaches of the franchise agreement that occurred after November 16, 2017, which was the last date on which Allison operated the business under the agreement (*see* Filing No. 1-2 at 7–8). Thus, Noble Roman's claim for breach of contract in this action is based, in part, on ten separate categories of acts and omissions by Allison that occurred after the 2014 lawsuit was dismissed in February 2017.

---

[1] Allison acknowledges that this lawsuit also has a Lanham Act claim, which he does not challenge in his Motion to Dismiss.

Noble Roman's asserts that its 2014 lawsuit was filed on November 5, 2014, and all of its claims were based on Allison's acts and omissions that occurred prior to November 5, 2014. At that time, Allison was still operating the franchised business under the parties' agreement, and he would continue operating the business until November 16, 2017, three years later. In this pending lawsuit, Noble Roman's new claims for breach of contract and deception arose after November 5, 2014, both during the remaining term of the franchise agreement and afterward. Noble Roman's argues that it could not have asserted these new claims in the 2014 lawsuit because they either did not exist or could not have been known to Noble Roman's as of November 5, 2014.

Noble Roman's further argues that the evidence from the May 2015 audit was not in existence at the time the first lawsuit was filed in November 2014, so the claim for damages based on the May 2015 audit could not have been brought in the first lawsuit, and the trial rules do not require a party to amend its pleadings. Therefore, Noble Roman's argues it should be permitted to bring its breach of contract and deception claims in this lawsuit as they arise out of new, distinct actions taken by Allison and are based on new, distinct evidence.

Relying on *Glass v. Continental Assur. Co.*, 415 N.E.2d 126, 129 (Ind. Ct. App. 1981), Noble Roman's also asserts that, where parties have ongoing obligations under a contract and a suit is filed for a breach of the contract, the proper remedy for future breaches is to file separate lawsuits as the future breaches occur, or alternatively, to wait until all claims under the contract have matured and file one lawsuit for the all breaches.

The Court concludes that the principles of res judicata and claim preclusion apply to limit Noble Roman's claims in this lawsuit. In order for res judicata and claim preclusion to apply,

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and

13

(4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Freels*, 94 N.E.3d at 342. The parties do not dispute that factors one, two, and four are satisfied. Noble Roman's argues that the third factor is not met. However, Noble Roman's argument does not comport with the records in the prior lawsuit and this lawsuit and the well-established case law regarding claim preclusion.

The case law is clear: claim preclusion applies if "the matter now in issue was, ***or could have been***, determined in the prior action," and "all matters that were ***or might have been*** litigated are deemed conclusively decided by the judgment in the prior action." *Id.* (emphasis added); *see also M.G. v. V.P.*, 74 N.E.3d 259, 264 (Ind. Ct. App. 2017); *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003).

In the 2014 lawsuit, Noble Roman's described the parties' October 17, 2006 franchise agreement, which required Allison to pay a "continuing weekly royalty fee." Noble Roman's 2014 complaint further described Noble Roman's "right to recover all amounts due under the Agreement." The complaint alleged that Allison began operating the franchised business on November 16, 2007. The complaint further alleged that Noble Roman's audited Allison for the period of November 2007 through April 2014; in other words, the audit was conducted to review Allison's records from the very moment that royalties began accruing under the contract. And Noble Roman's 2014 complaint asked for damages "in an amount to be proven at trial."

In this case between the same parties, pursuant to the same October 17, 2006 franchise agreement, which required Allison to pay a "continuing weekly royalty fee," Noble Roman's again seeks unpaid royalty fees and also damages based on deception—this time for a period commencing in September 2014 based on an audit undertaken in May 2015. Both the audit period and the date when the audit was conducted were well before the 2014 lawsuit concluded. These

additional unpaid royalty fees and damages based on deception could have been and should have been raised in the prior litigation.

This case is not like *Glass v. Continental Assur. Co.*, upon which Noble Roman's relies. That case briefly discussed alternative courses of action a party could take where speculative damages based on speculative, possible future breaches might occur. In May 2015, Noble Roman's performed the second audit of the gross sales reported by Allison between September 2014 and April 2015. Based on this audit that was performed and finished during the 2014 lawsuit, Noble Roman's had actual knowledge of the alleged ongoing breaches by Allison. There was nothing speculative about possible "future breaches."

Interestingly, Noble Roman's argued that, for purposes of the res judicata analysis, the question is not whether a plaintiff had actual knowledge of the additional breaches and acts of deception, but rather, the question is whether a reasonably prudent person who had the means of such knowledge at hand would have ascertained it. *See Freels*, 94 N.E.3d at 344. Noble Roman's not only had the means of ascertaining Allison's additional breaches and acts of deception, but it actually did ascertain that knowledge during the pendency of the 2014 lawsuit. Thus, claim preclusion and res judicata demand that Noble Roman's bring the claims in the prior lawsuit or lose the claims.

Undoubtedly, any claim for unpaid royalty fees and any claim for damages based on false and inaccurate weekly reports of gross sales would have been discovered throughout the 2014 litigation and presented as evidence at trial. These claims could have been and should have been presented in the 2014 lawsuit. Thus, the Court concludes that res judicata and claim preclusion apply to Noble Roman's claims for breach of contract and deception based on Allison's failure to pay royalty fees on gross sales, failure to pay interest on those unpaid royalty fees, and presentation

of false and inaccurate weekly reports of gross sales. Because these claims should have been pursued in the 2014 lawsuit, the Court limits these claims in this lawsuit to the date that the 2014 lawsuit was finally adjudicated on the merits.

Noble Roman's claims for breach of contract and deception are thus barred for unpaid royalty fees, unpaid interest, and false and inaccurate weekly reports prior to and including February 17, 2017—the date the 2014 case was dismissed. However, Noble Roman's may pursue its breach of contract and deception claims based on unpaid royalty fees, unpaid interest, and false and inaccurate weekly reports (as well as the other alleged acts of deception and breaches of the contract) that occurred after February 17, 2017.

As an additional basis for dismissal, Allison further argues that the claim for deception must be dismissed because the claim is based on fraud, and it is not alleged with the requisite level of particularity as required by Federal Rule of Civil Procedure 9.

Noble Roman's responds that its deception claim is based on Indiana's deception statute, not a common law claim for fraud. The Indiana statute provides that "[a] person who . . . knowingly or intentionally makes a false or misleading written statement with intent to obtain property . . . commits deception, a Class A misdemeanor." Ind. Code § 35-43-5-3(a)(2). Noble Roman's asserts,

> There is no requirement under the statute that Plaintiff plead the elements of fraud, as argued by Defendant. *See* Defendant's Brief at pp. 22-23. Rather, in order to plead a claim for deception, Plaintiff is only required to plead facts indicating that Defendant "knowingly or intentionally made a false or misleading written statement in order to obtain money" from Plaintiff. *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1118 (Ind. Ct. App. 2008) (citing IND. CODE § 35-43-5-3(a)(2)). Thus, for example, pleading proof of reliance is not required. *Carrel v. George Weston Bakeries Distribution, Inc.*, No. 1:05-cv-01769-SEB-JPG, 2006 WL 1005041, at *2 (S.D. Ind. April 13, 2006).

([Filing No. 34 at 22](#).)

Noble Roman's argument is well-taken, and a review of the allegations in the Complaint indicates that Noble Roman's has sufficiently pled facts to raise a claim under Indiana's deception statute. Therefore, Allison's Rule 9 argument does not warrant dismissal of the deception claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Allison's Motion to Transfer ([Filing No. 9](#)) and **GRANTS in part and DENIES in part** his Motion to Dismiss ([Filing No. 11](#)). Noble Roman's breach of contract and deception claims are limited to conduct that occurred after February 17, 2017.

**SO ORDERED.**

Date: 9/19/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Erick P. Knoblock
DALE & EKE PC
eknoblock@daleeke.com

Geffrey Dean Rainbolt
DALE & EKE, PC
grainbolt@daleeke.com

James A. Carter
WOODEN & MCLAUGHLIN LLP
james.carter@woodenlawyers.com

Kara N. Ellison
RAMSEY AND GRAY, P.C.
kara@ramseygraypc.com

Michael D. Gray
RAMSEY AND GRAY, P.C.
mgray@ramseygraypc.com

Michael Rabinowitch
WOODEN & MCLAUGHLIN LLP
Michael.Rabinowitch@WoodenLawyers.com

17